## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **BRIAN ROBERT BLAZER d/b/a CARPENTER BEE SOLUTIONS,**<br><br>          **Plaintiff,**<br><br>**v.**<br><br>**THE HOME DEPOT U.S.A, INC.,**<br><br>          **Defendant.** | **Civil Action No. 6:20-cv-285**<br><br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Brian Robert Blazer d/b/a Carpenter Bee Solutions ("Blazer" or "Plaintiff") by and through its undersigned counsel, files this Original Complaint against The Home Depot U.S.A., Inc.  ("Home Depot" or "Defendant"), as follows:

## PARTIES

1. Plaintiff is a sole proprietorship owned and operated by Brian Robert Blazer with a principal place of business located in Cleburne County at 230 County Road 880, Heflin, Alabama 36264.

2. Upon information and belief, Defendant The Home Depot U.S.A., Inc. is a Delaware Corporation with its principal place of business at 2455 Paces Ferry Road, Atlanta, Georgia, 30339-4024, and may be served with process by serving its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX  78701-3218.

**JURISDICTION AND VENUE**

3.  This Court has subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, 284, and 285.

4.  This Court has personal jurisdiction over Defendant because: (i) Defendant maintains regular and established places of business within the State of Texas and within this judicial district and division; (ii) Defendant is registered and authorized to transact business in Texas; (iii) Defendant purposely, regularly, and continuously conducts business in the State of Texas and within this judicial district and division; and (iv) the causes of action set forth herein arise out of or relate to Defendant's activities in the State of Texas.

5.  Venue is proper in the Western District of Texas pursuant to 28 U.S.C. §§ 1391 and 1400(b).  Upon information and belief, Defendant has committed acts of infringement within this judicial district and has regular and established places of business within this judicial district, including, without limitation, through it's The Home Depot stores.  Upon information and belief, The Home Depot stores are located within the Western District of Texas at 1803 North I-35 Bellmead, Waco, TX; 5605 W Waco Dr., Waco, TX; 3550 S General Bruce Dr., Temple, TX; 3201 E Central Texas Exp., Killeen, TX 76543; 1303 Rivery Blvd., Georgetown, TX; 2552 S Interstate Hwy 35, Round Rock, TX; 2700 Whitestone Blvd., Cedar Park, TX; 11301 Lakeline Blvd., Austin, TX; and 1517 Town Center Dr., Pflugerville, TX; and 600 W Hwy 79, Hutto, TX 78634.  Upon information and belief, Defendant also offers employment to and employs hundreds of residents of the State of Texas and residents of this judicial district at it's The Home

Depot Stores.[1]

## **RELEVANT FACTS**

6. On June 6, 2017, the USPTO issued United States Reissue Patent No. RE46,421 (the "'421 Patent"), which is a reissue of United States Patent No. 8,375,624 (the "'624 Patent"), which issued on February 19, 2013.  A true and correct copy of the '421 Patent is attached hereto as Exhibit A and a true and correct copy of the '624 Patent is attached hereto as Exhibit B.

7. Plaintiff is the owner, by assignment, of all right, title and interest in and to the '421 Patent and the '624 Patent. The '624 Patent was valid and enforceable up to June 6, 2017, at which time the '624 Patent was surrendered when the '421 Patent issued.  The '421 Patent is valid and enforceable.  Plaintiff has the right to bring suit for past, present and future patent infringement, and to collect past, present, and future damages.

8. Plaintiff has been selling carpenter bee traps (hereinafter "carpenter bee trap(s)" or "bee trap(s)") covered by the '624 Patent and '421 Patent since at least 2009.  Most of the sales were through Plaintiff's website at the time (www.carpenterbeesolutions.com) and through licensees of the '624 and '421 Patents.

9. Best Bee Brothers LLC ("Best Bee Brothers") have been manufacturing and selling bee traps that infringe the '421 Patent without authorization since at least October 2017.

10. Plaintiff has a pending claim for patent infringement against Best Bee Brothers in the U.S. District Court for the Eastern District of Wisconsin (Case No. 2:20-cv-480) (hereinafter "the Best Bee Brothers Case").

---

[1] *See* https://careers.homedepot.com/job-search-results/?location=Waco%2C%20TX%2C%20USA&latitude=31.549333&longitude=-97.1466695&radius=50) and https://www.indeed.com/jobs?q=Home+Depot&l=Austin%2C+TX&radius=50.

11.     At least two infringing bee traps identified by Plaintiff in the Best Bee Brothers Case are currently being sold by Defendant via at least Defendant's website. Defendant currently labels the infringing bee traps, which are manufactured and sold to Defendant by Best Bee Brothers, as the "Best Bee Brothers Best Carpenter Bee Trap" and "Best Bee Brothers Pinewood Carpenter Bee Trap." True and correct screenshots from Defendant's website, as it appeared on April 8, 2020, are shown in Figures 1A and 1B below and attached as Exhibit C.[2]



Figure 1A[3]                               Figure 1B[4]

12.     On information and belief, the infringing bee traps manufactured by Best Bee Brothers are also offered for sale via at least some of Defendant's retail stores.

13.     Davis Product Creation and Consulting, LLC, d/b/a Bees N Things (hereinafter "Bees N Things") has been manufacturing and selling bee traps that infringed the '624 Patent and that continue to infringe the '421 Patent since at least March 2013.

14.     Plaintiff has a pending claim for patent infringement against Bees N Things in the U.S. District Court for the Northern District of Alabama (Case No. 1:19-cv-00848-CLM) (hereinafter "the Bees N Things Case").

---

[2] https://www.homedepot.com/p/Best-Bee-Brothers-Best-Carpenter-Bee-Trap-11096/304971455 and https://www.homedepot.com/p/Best-Bee-Brothers-Pinewood-Carpenter-Bee-Trap-13419/305882260, as visited April 8, 2020.
[3] Exhibit C.
[4] Exhibit C.

15.     At least two of the infringing bee traps identified by Plaintiff in the Bees N Things Case are currently being sold by Defendant via at least Defendant's website. Defendant currently labels both infringing bee traps, which are manufactured and sold to Defendant by Bees N Things, as the "Bees N Things Hanging Carpenter Bee Trap." True and correct screenshots from Defendant's website, as it appeared on April 8, 2020, are shown in Figures 2A and 2B below and attached as Exhibit D.[5]



Figure 2A[6]                                        Figure 2A[7]

16.     On information and belief, the infringing bee traps manufactured by Bees N Things are also offered for sale via at least some of Defendant's retail stores.

17.     Defendant also offers for sale, via at least Defendant's website, infringing bee traps manufactured by "Protectyte" and labeled as "Protectyte Bad-Bee-Gone Carpenter Bee Trap." A true and correct screenshot from Defendant's website, as it appeared on April 8, 2020, is shown in Figure 3 below and attached as Exhibit E.[8]

---

[5] https://www.homedepot.com/p/Bees-N-Things-Hanging-Carpenter-Bee-Trap-100537614/307725289 and https://www.homedepot.com/p/Bees-N-Things-Hanging-Carpenter-Bee-Trap-100532022/302849254, as visited April 8, 2020.
[6] Exhibit D.
[7] Exhibit D.
[8] https://www.homedepot.com/p/Protectyte-Bad-Bee-Gone-Carpenter-Bee-Trap-Set-of-2-HDBT-2V/306239008, as visited April 8, 2020.



Figure 3[9]

18.     On information and belief, the infringing bee trap manufactured by Protectyte is also offered for sale via at least some of Defendant's retail stores.

19.     On May 9, 2019 Plaintiff, through Plaintiff's counsel, sent a letter and enclosures to Defendant (hereinafter "the May 2019 Letter") in which Plaintiff informed Defendant that the bee traps they were selling via their website appeared to infringe the '421 Patent. The May 2019 Letter also requested that Defendant immediately remove the infringing bee traps from their website and that they also immediately cease selling the infringing bee traps through Defendant's retail locations. A true and correct copy of the May 2019 Letter is attached as Exhibit F.

20.     In response to the May 2019 Letter, Defendant sent a letter dated June 4, 2019 to Plaintiff's counsel, in which Defendant stated that "The Home Depot has contacted its suppliers, who are in the best position to address your allegations. Together we have begun to review your allegations and, I understand that representatives from those suppliers have already begun contacting you." A true and correct copy of the Defendant's June 4, 2019 letter is attached as Exhibit G.

21.     In spite of Defendant's assertion that "representatives from those suppliers have already begun contacting you," the only supplier that "contacted" Plaintiff was DPCC and the

---

[9] Exhibit E.

"contact" was a patent infringement complaint filed by DPCC against Plaintiff (the Bees N Things Case). Neither Best Bee Brothers nor Protectyte contacted Plaintiff.

22.     As of the date of this Complaint, Defendant has not removed the infringing bee traps from their website and, on information and belief, continues to sell the infringing bee traps through at least some of their retail locations.

Plaintiff's History with Best Bee Brothers

23.     In or about the late summer of 2015 (August – September 2015), Plaintiff decided to search for a manufacturer to build and possibly help distribute his patented bee traps because Plaintiff anticipated that the demand for his bee traps would outpace his ability to manufacture and ship them.

24.     Plaintiff conducted an Internet search and found RSP, Inc. ("RSP").  At that time, RSP's website stated that it specialized in manufacturing and protecting intellectual property rights.  A true and correct screenshot from an archived version of RSP's website as it appeared on August 9, 2015 is shown below in Figure 4.[10] RSP's website stated at the time: "The customer's intellectual property is protected at RSP."

---

[10] Source: Internet Archive Wayback Machine.
(https://web.archive.org/web/20150809060707/http://www.rspinc.com/contract.php).



Figure 4 – RSP's Website on August 9, 2015.

25.     Plaintiff grew up on a dairy farm in Wisconsin 20 miles south of Green Bay. Plaintiff decided to contact RSP about manufacturing his patented carpenter bee traps based, in part, on the fact that they were a Wisconsin company owned by Wisconsin natives.  In the words of Plaintiff: "Wisconsin dairy farmers are extremely hard working and honesty is the code they live by . . . our doors were never locked.  I was free to enter any of my neighbors' farms, barns, even houses . . . we trusted each other and we were trustworthy.  This quality is as I learned moving around the Country.  I thought these people [RSP] would has similar core values as I grew up with."

26.     Plaintiff communicated with RSP co-owners Mike Ryan and Paul Ryan, who expressed an interest in manufacturing and selling Plaintiff's patented bee traps.  Later, Plaintiff learned that Mike Ryan and Paul Ryan had never even heard of carpenter bees prior to their discussions with Plaintiff.  They had no knowledge or experience regarding carpenter bee traps.

27.     In or around October 2015, Paul Ryan visited Plaintiff's home to present a proposed license to Plaintiff that would give RSP the exclusive right to manufacture and sell

Plaintiff's bee traps.

28.     Plaintiff and RSP were not able to agree on terms for a long-term exclusive license. However, in or around October 2015 Plaintiff and RSP did enter a temporary nonexclusive license agreement (the "Temporary License").

29.     On information and belief, the material terms of the Temporary License were as follows: (1) RSP was granted the right to manufacture and sell 20,000 bee traps; (2) RSP agreed to pay Plaintiff a 15% royalty based on sales revenues; (3) Plaintiff agreed to provide technical know-how and advertising assistance to RSP; (4) Plaintiff agreed to turn over control of Plaintiff's URL (www.carpenterbeesolutions.com); and (5) Plaintiff agreed to let RSP market the bee traps under Plaintiff's brand name "Best Bee Trap."

30.     RSP co-owners Mike Ryan and Paul Ryan established a separate company, Best Bee Brothers LLC, ("Best Bee Brothers") for marketing and selling Plaintiff's patented carpenter bee traps.

31.     As part of their obligation to help Best Bee Brothers with advertising, Plaintiff created marketing videos explaining how the patented carpenter bee trap works, as well as troubleshooting videos that Best Bee Brothers could make available to their carpenter bee trap customers.

32.     After entering into the Temporary License, RSP put together a marketing brochure for Best Bee Brothers ("Brochure") to present to Tractor Supply Company ("TSC"), in an attempt to enter into a distribution agreement with TSC.  A true and correct scanned copy of the Brochure is attached as Exhibit H.

33.     Notably, the Brochure indicates that the bee trap illustrated, described and offered for distribution is covered by the '624 Patent (which ultimately reissued as the '421 Patent), and

also includes some pages from the '624 Patent (*see* Figs. 5-7 below). <u>The bee trap illustrated in the Brochure is identical to the "Best Bee Brothers Best Carpenter Bee Trap" offered for sale by Defendant (*see* Figure 1A above)</u>.



Figure 5[11] – Page 1 of the Brochure.

---

[11] Exhibit H.



Figure 6[12] – Page 6 of the Brochure.

---

[12] Exhibit H.



Figure 7[13] – Page 13 of the Brochure.

34.    A red flag was raised for Plaintiff when, in spite of RSP's representation that "customer's intellectual property is protected at RSP," RSP included in the Best Bee Brothers Brochure under a "The Future for Best Bee Brothers" heading, a description and illustration of a bee trap that they were developing and that was a blatant attempt to "design around" Plaintiff's patented bee trap that was the subject of the Temporary License.  *See* Figure 8 below.

---

[13] Exhibit H.



Figure 8[14] – Page 10 of the Brochure.

35.     RSP/Best Bee Brothers also sent Plaintiff prototypes of bee traps that were not covered by Plaintiff's patent for testing by Plaintiff.  Plaintiff informed RSP/Best Bee Brothers that it was not a good idea to try to develop and market a carpenter bee trap that was not covered by Plaintiff's patent and that this behavior was not consistent with RSP's representation that "customer's intellectual property is protected at RSP." Plaintiff tested these attempted "design around" bee traps and they did not work.

36.     During the term of the Temporary License, Plaintiff contracted with another company, Chrisman Mill Farms, for the manufacture of carpenter bee traps that would be made

---

[14] Exhibit H.

in the United States by military veterans.  RSP/Best Bee Brothers approached Plaintiff about taking over that contract and represented to Plaintiff that they would manufacture the carpenter bee traps in Milwaukee and employ disable veterans to make the carpenter bee traps.

37.   Plaintiff gave RSP/Best Bee Brothers an opportunity to demonstrate that they could manufacture such veteran and American made carpenter bee traps, but the carpenter bee traps that they delivered were, in fact, manufactured at their Chinese manufacturing facility and were of significantly lower quality than the carpenter bee traps that were being manufactured and sold by Chrisman Mill Farms.  Thus, Plaintiff did not allow RSP/Best Bee Brothers to take over that contract.

38.   With respect to the Temporary License, RSP/Best bee Brothers sold the 20,000 bee traps that were authorized under the Temporary License and paid Plaintiff the agreed upon 15% royalty for those 20,000 bee traps.

39.   Even though the Temporary License did not authorize additional manufacturing and sales beyond 20,000 bee traps, RSP/Best Bee Brothers manufactured and sold an additional 60,000 traps and paid Plaintiff a 15% royalty on those sales.

40.   Plaintiff informed RSP/Best Bee Brothers that they would have to enter into another license agreement in order for RSP/Best Bee Brothers to continue to manufacture and sell Plaintiff's patented bee trap.

41.   Plaintiff and RSP/Best Bee Brothers were not able to agree on the terms of a new license agreement, and RSP/Best Bee Brothers informed Plaintiff that they would stop selling bee traps on October 1, 2017.

42.   However, RSP/Best Bee Brothers continued to sell Plaintiff's patented bee traps without authorization after October 1, 2017.  In addition, they continued to market their

infringing bee traps using Plaintiff's original brand name "Best Bee Trap."

43.    In December 2015, Plaintiff entered into a Settlement Agreement with Amazon.com ("Amazon"), which provided Plaintiff a mechanism for removing current and future infringing bee trap listings from Amazon.

44.    Because Plaintiff and RSP/Best Bee Brothers were not able to agree on terms of a new license agreement, Plaintiff had RSP/Best Bee Brother's infringing bee trap listings removed from Amazon.  However, RSP/Best Bee Brothers continued to sell infringing bee traps through their own website and through third party retailers, including The Home Depot.

45.    RSP/Best Bee Brothers were desperate to get their infringing bee traps back on Amazon (via Best Bee Brothers) during the 2018 carpenter bee season, which typically starts in or around April.  Thus, in or around April/May 2019, RSP/Best Bee Brothers reached out to Plaintiff again regarding a possible license agreement to manufacture and sell Plaintiff's patented bee trap.

46.    RSP/Best Bee Brothers reached out to Plaintiff on April 28, 2018 via a text exchange between Mike Ryan (RSP/Best Bee Brothers) and Plaintiff, Brian Blazer.  Screenshots of the text exchange that took place between April 28, 2018 and May 1, 2018 is attached hereto as Exhibit I (hereinafter "2018 Text Exchange" or Exhibit I).

47.    In the 2018 Text Exchange, Plaintiff reminded Mike Ryan that they had not compensated Plaintiff for their infringing sales and indicated to Mike Ryan that he would consider granting them a license if RSP/Best Bee Brothers compensated him for past infringing sales.

48.    Mike Ryan responded by apologizing and stating that they would compensate Plaintiff for past sales but only if Plaintiff agreed to grant a license for future sales to RSP/Best

Bee Brothers.  Specifically, Mike Ryan states "I will compensate you for all past sales . . . I can send a check based on having a signed contract . . . [w]e will make up every penny for every trap but we need to get back on amazon."  Thus, Mike Ryan admitted that RSP/Best Bee Brothers is liable for royalties on past sales of their carpenter bee traps.

49.     Prior to this communication from Mike Ryan (on behalf of RSP/Best Bee Brothers), and because RSP/Best Bee Brothers did not agree to Plaintiff's terms for a license, Plaintiff entered into a license with another licensee ("New Licensee") to manufacture and sell his carpenter bee traps.   The New Licensee invested over $100,000 in carpenter bee trap inventory for sale during the 2018 carpenter bee season.

50.     Thus, Plaintiff was hesitant to offer RSP/Best Bee Brothers a license at this time for two reasons: (1) RSP/Best Bee Brothers conditioned compensating Plaintiff for past infringing sales on Plaintiff granting RSP/Best Bee Brothers a license (essentially, RSP/Best Bee Brothers were refusing to pay amounts they owed Plaintiff for past infringing sales as leverage to negotiate a license with terms favorable to them); and (2) Plaintiff did not want to impede the ability of the New Licensee to sell the bee trap inventory they had invested in for the 2018 carpenter bee season by licensing RSP/Best Bee Brothers at the beginning of the 2018 carpenter bee season.

51.     After the New Licensee sold their bee trap inventory, Plaintiff again approached RSP/Best Bee Brothers with a license offer.  However, RSP/Best Bee Brothers again declined to enter into a license agreement with Plaintiff**.**

### **ACCUSED INSTRUMENTALITIES**

52.     Plaintiff incorporates the foregoing paragraphs by reference.

53.     Upon information and belief, Defendant sells, advertises, offers for sale, uses, or

otherwise provides carpenter bee traps including, but not necessarily limited to, the "Best Bee Brothers Best Carpenter Bee Trap," the "Best Bee Brothers Pinewood Carpenter Bee Trap," the "Bees N Things Hanging Carpenter Bee Trap" (Model #100537614), the "Bees N Things Hanging Carpenter Bee Trap" (Model #100532022) and the "Protectyte Bad-Bee-Gone Carpenter Bee Trap" (collectively the "Accused Instrumentalities").

**INFRINGEMENT OF US PATENT NO. RE46,421**

54.     Plaintiff incorporates the foregoing paragraphs by reference.

55.     Defendant has been on notice of the '421 Patent at least as early as the date Defendant received the May 2019 Letter.

56.     Upon information and belief, Defendant has directly infringed at least claims 1, 2, 6-8, 10 and 13-17 of the '421 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

57.     Upon information and belief, Defendant has willfully infringed, has willfully and actively induce the direct infringement by others, and has willfully and actively contributed to the infringement of others, at least claims 1, 2, 6-8, 10 and 13-17 of the '421 Patent.  Defendant's infringement of the '421 Patent has been objectively reckless, willful and deliberate, entitling Plaintiff to enhanced damages pursuant to 35 U.S.C. § 284 and to attorneys' fees pursuant to 35 U.S.C. § 285.

58.     Defendant offers for sale and sells the "Best Bee Brothers Best Carpenter Bee Trap", which is a representative example of the Accused Instrumentalities and is a carpenter bee trap. See Figure 1A, reproduced below, which is screenshot from Defendant's website, showing a picture of the Best Bee Brothers Best Carpenter Bee Trap.



Figure 1A[15]

59.     As shown in Figure 2 below, which is an annotated version of the Best Bee Brothers Best Carpenter Bee Trap shown in Figure 1A, the bee trap includes a trap entrance unit (Arrow A) that forms a plenum composed of wood.



Figure 9[16] – Best Carpenter Bee Trap.

60.     As shown above in Figure 9, the bee trap has a trap entrance unit having at least

---

[15] Exhibit C.
[16] Exhibit C.

one hole drilled there through and sized to mimic a natural carpenter bee nest tunnel so as to provide a primary attractant (Arrow B).

61.    As shown above in Figure 9, the entrance hole of the bee trap extends at an upward angle (Arrow B).  The hole is sized and shaped to provide a primary attractant for carpenter bees. The bee trap also includes a means to shelter an entrance to the hole in the form of a top panel (Arrow C) that overhangs a side wall (Arrow D) of the trap entrance unit (Arrow A).

62.    As shown in Figure 10 below, which is a front view of the Best Bee Brothers Best Carpenter Bee Trap shown in Figure 1A, the bee trap contains a receptacle adapter (Arrow E) located at the bottom of the trap entrance unit (Arrow A).  The receptacle adapter (Arrow E) is configured to receive a clear or translucent receptacle (Arrow F).



Figure 10[17] – Best Carpenter Bee Trap.

[17] https://www.homedepot.com/p/Best-Bee-Brothers-Best-Carpenter-Bee-Trap-11096/304971455, as visited on April 8, 2020.

63.    As shown above in Figures 9 and 10, the receptacle (Arrow F) is received by the receptacle adapter (Arrow E).  The clear or translucent receptacle (Arrow F) is situated at the bottom of the trap entrance unit (Arrow A).  Ambient light passes through the clear or translucent receptacle (Arrow F) into the interior of the plenum (Arrow A) through a hole, located at the bottom of the plenum (Arrow A).  The ambient light entering the bottom of the plenum (Arrow A) serves as a secondary attractant.  The clear or translucent receptacle (Arrow F) receives trapped carpenter bees.

64.    Further, the manufacturer of the Best Bee Brothers Best Carpenter Bee Trap (Best Bee Brothers) has explicitly acknowledged that the Best Bee Brothers Best Carpenter Bee Trap is covered by the claims of the '624 Patent, which was reissued as the '421 Patent.

65.    Specifically, the Brochure that RSP/Best Bee Brothers created to present to TSC explicitly states that the "Best Bee Trap," which is the same design as the "Best Bee Brothers Best Carpenter Bee Trap" currently offered on Defendant's website, is a **"Patented Design (Patent # 837624)**."  *See* Figures 5 and 6, reproduced below.




Figure 5[18]          Figure 6[19]

---

[18] Exhibit H.

66.     Indeed, the Best Bee Brothers Best Carpenter Bee Trap sold by Defendant utilizes a design that was literally copied from the '624 Patent and the '421 Patent. *See* Figures 11A and 11B below, which show a picture of the Best Bee Brothers Best Carpenter Bee Trap next to one of the figures in the '421 Patent.




Figure 11A[20]                                    Figure 11B[21]

67.     Defendant also offers for sale and sells the "Bees N Things Hanging Carpenter Bee Trap" ("Bees N Things Trap"), which is another representative example of the Accused Instrumentalities and is a carpenter bee trap. See Figure 2A, reproduced below, which is screenshot from Defendant's website, showing a picture of the Bees N Things Trap.

---

[19] Exhibit H.
[20] https://www.homedepot.com/p/Best-Bee-Brothers-Best-Carpenter-Bee-Trap-11096/304971455, as visited on April 8, 2020.

[21] Exhibit A.



Figure 2A[22]

68.     As shown in Figures 12A and 12B below, which are true and correct photographs of the Bees N Things Trap, the Bees N Things Trap includes a trap entrance unit that is formed of wood (Arrows C and G).



Figure 12A                                        Figure 12B

---

[22] Exhibit D.

69.     As shown above in Figs. 12A and 12B, the Accused Instrumentality has a trap entrance unit (Arrows C and G) having at least one hole extending from the outside of the trap entrance unit to the interior of the trap entrance unit (Arrow B).

70.     As shown above in Figs. 12A and 12B, the entrance hole (Arrow B) extends at an upward angle (Arrow B). The hole is sized and shaped to provide a primary attractant for carpenter bees.

71.     As shown above in Fig. 12B, the Accused Instrumentality includes an exit opening (Arrow D) for providing an exit path from the interior of the trap entrance unit.

72.     As shown above in Fig. 12B, the Accused Instrumentality includes a receptacle adapter (Arrows E) located at the exit opening (Arrow D). The receptacle adapter (Arrows E) is adapted to receive at least one receptacle (Arrow F). Further, the receptacle adapter (Arrows E) is adapted to allow ambient light to enter the interior of the trap entrance unit (Arrow B) via the exit opening (Arrow D) because it does not obstruct the exit opening.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

A.     An adjudication that one or more claims of the '421 Patent has been infringed, either literally and/or under the doctrine of equivalents, by Defendant and/or by others to whose infringement Defendant has contributed and/or by others whose infringement has been induced by Defendant;

B.     An award to Plaintiff of damages adequate to compensate Plaintiff for Defendant's acts of infringement together with pre-judgment and post-judgment interest;

C.    An adjudication that one or more of Defendant's acts of infringement be found to be willful from in or about May 2019, which is the time that Defendant became aware of the infringing nature of their actions, and that the Court award treble damages for the period of such willful infringement, pursuant to 35 U.S.C. § 284;

D.    A grant of permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendant from further acts of (1) infringement, (2) contributory infringement, and (3) actively inducing infringement with respect to the '421 Patent;

E.    That this Court declare this to be an exceptional case and award Plaintiff reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

F.    Any further relief that this Court deems just and proper.

Dated:  April 9, 2020          Respectfully Submitted

*/s/ Thomas Fasone III*

Thomas Fasone III
Texas Bar No. 00785382
tfasone@ghiplaw.com
M. Scott Fuller
Texas Bar No. 24036607
sfuller@ghiplaw.com
René A. Vazquez
*Pro Hac Vice Anticipated*
rvazquez@ghiplaw.com
Randall T. Garteiser
*Pro Hac Vice Anticipated*
rgarteiser@ghiplaw.com
Christopher A. Honea
*Pro Hac Vice Anticipated*
chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (888) 908-4400


Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com
**THE MORT LAW FIRM, PLLC**
100 Congress Ave, Suite 2000
Austin, Texas 78701
Tel/Fax: (512) 865-7950

**ATTORNEYS FOR
PLAINTIFF BRIAN BLAZER D/B/A
CARPENTER BEE SOLUTIONS**